Millicent GEIST, Plaintiff-Appellant,

v.

James R. MARTIN, et al., Defendants-Appellees.

No. 81–1700.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1982.

Decided April 13, 1982.

Rehearing and Rehearing En Banc Denied May 21, 1982.

---

Robert Gilbert Johnston, Chicago, Ill., for plaintiff-appellant.

J. Robert Geiman, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants-appellees.

Before SWYGERT and PECK,* Senior Circuit Judges, and ESCHBACH, Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Plaintiff-appellant Millicent Geist brought this diversity action against seven officers of the Massachusetts Mutual Life Insurance Corp. alleging that those officers acted "individually and together" to cause the termination of plaintiff's husband as a general agent for the company. Plaintiff alleged that the sole purpose of that termination was to retaliate against plaintiff for her exercise of certain loan privileges under insurance policies issued by the corporation and held by the plaintiff. The complaint further asserted that the defendants had acted "with the intent, or with reckless

disregard of the probability, of causing emotional distress" to plaintiff. Plaintiff sought damages under Illinois law for the intentional infliction of emotional distress, a tort first recognized by Illinois in *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961).

The district court granted a motion to dismiss the complaint for lack of personal jurisdiction as to three of the seven defendants. The court found that the only jurisdictional fact asserted in the complaint as to those three defendants was that they had acted "individually and together" with the remaining four defendants to cause the termination of plaintiff's husband. The three defendants had supported their motion to dismiss with affidavits stating they had had no contacts with the State of Illinois, and plaintiff failed to respond to those affidavits, apparently relying on the allegations of the complaint. The court concluded that the "weak and general allegation" that the three defendants acted together with the remaining four defendants, who had been physically present in Illinois in connection with the husband's termination, was insufficient to rebut the affidavits submitted by the defendants.

The district court subsequently granted the remaining four defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Taking the allegations of the complaint to be true, the court found that the alleged tortious act was the termination of the husband's employment. However, there was no allegation that the husband was anything more than an employee at will whom the defendants were privileged to terminate at anytime without cause. The court concluded that under Illinois law, "The defendants are not liable for doing what they had a legal right to do." *Citing, Public Finance Corp. v. Davis*, 66 Ill.2d 85, 92, 4 Ill.Dec. 652, 655, 360 N.E.2d 765, 768 (1976). The district court further held that even if the termination of plaintiff's husband had been wrongful, the complaint alleged acts "legal-

* Honorable John W. Peck, Senior Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

ly insufficient to constitute such extreme and outrageous conduct calculated to cause severe emotional distress," and therefore did not state a cause of action under Illinois law.

On appeal, plaintiff asserts that the district court erred both in granting the motion to dismiss for want of personal jurisdiction and in granting the motion to dismiss for failure to state a claim. Because the plaintiff's cause of action against all of the defendants must fall if the complaint failed to state a claim upon which relief could be granted, we will first deal with that question.

■ In this diversity action we are required to decide questions of law as would the courts of Illinois. Accordingly, we must determine whether Illinois courts would conclude that it was proper to dismiss the complaint as legally insufficient to state a claim for the intentional infliction of severe emotional distress. We believe that the district court erred to the extent that it determined that a cause of action for the infliction of emotional distress may never be sustained in Illinois where the defendant's conduct was the exercise of a legal right. The district court cited language from *Public Finance, supra,* for that conclusion. However, in *Public Finance* the Illinois Supreme Court considered at length whether the defendants' exercise of the undisputed legal right to collect a debt was conducted in a "permissible" manner, or whether the defendants had behaved "outrageously" in exercising that right. The court concluded that the complaint in *Public Finance* failed to state a claim because it did not allege extreme, excessive, or outrageous conduct. It did not affirm the dismissal of the complaint on the ground that the defendants had exercised a legal right.

Accordingly, we believe that the issue on appeal in the present case is whether the district court was correct in dismissing the complaint because the defendants' alleged conduct can never constitute the extreme and outrageous conduct required by Illinois to sustain the cause of action.

■ The Illinois cases teach that the determination whether alleged tortious conduct is so extreme to sustain a complaint for intentional infliction of emotional distress is a question to be resolved on a case-by-case examination of the facts asserted in the complaint. In *Public Finance* the Illinois Supreme Court upheld the dismissal of a complaint where the debtor-plaintiff alleged persistent attempts by the creditor-defendant to collect a debt. The court noted the absence of allegations of threats, abusive language or other similarly excessive conduct that might have made the defendants' efforts to collect the debt outrageous.

In *Sherman v. Field Clinic,* 74 Ill.App.3d 21, 29 Ill.Dec. 597, 392 N.E.2d 154 (1979), the Illinois Appellate Court distinguished *Public Finance* on its facts and held that a complaint was sufficient to state a claim for the intentional infliction of severe emotional distress. As in *Public Finance, Sherman* involved the efforts of a creditor-defendant to collect a debt. However, in *Sherman* the debtor-plaintiff complained that the defendant's actions included not only persistent efforts to collect a debt, but also frequent obscene language, threats of public embarrassment, threats of imprisonment, threats to garnish wages, and a contact with the plaintiff's minor daughter. On those facts the Illinois court concluded that plaintiff had stated a claim. The court also distinguished *Sherman* from *Kelly v. Franco,* 72 Ill.App.3d 642, 28 Ill.Dec. 855, 391 N.E.2d 54 (1979), where a complaint for the infliction of emotional distress that alleged only "mere indignities, threats, and trivialities" was found not to assert outrageous conduct. Clearly, Illinois has adhered to the statement in *Knierim, supra,* that "outrageousness" must be determined on the facts of each case.

The manner in which the Illinois courts have resolved the question whether the facts asserted by a complaint constitute outrageous conduct guides our analysis of the instant complaint. In *Public Finance* the court upheld dismissal of a complaint alleging that the defendant had engaged in repeated efforts to collect a debt at the

home of the plaintiff, had made repeated efforts to collect from the plaintiff at a hospital where plaintiff's daughter was hospitalized, had informed an acquaintance of the plaintiff that the plaintiff was writing bad checks, and that the defendant had refused to leave the plaintiff's home. In determining that these allegations did not assert outrageous conduct by the defendant, the Illinois Supreme Court considered the totality of the circumstances surrounding the alleged conduct, and apparently found that any wrongful character of the acts was mitigated by the traditional "latitude to pursue reasonable methods of collecting debts...."

We believe that this analysis is instructive in resolving whether the plaintiff in the present case alleged outrageous conduct by the defendants. When the totality of circumstances surrounding defendants' alleged conduct is considered, *Public Finance* is readily distinguishable. Whereas the defendants in *Public Finance* acted in furtherance of obtaining payment of a debt, the defendants in the present case are alleged to have acted solely to punish plaintiff because she exercised her rights under her insurance contracts with the defendants' company. In the former case any inappropriateness of the defendants' conduct was tempered by the fact that the defendant had a right to pursue the nonpaying creditor-plaintiff. In the present case the defendants may have had a right to terminate plaintiffs' husband, but they had no right to take a punitive action against the plaintiff solely because she exercised her rights under her contracts with the defendants' company. The issue before us is whether the defendants' conduct was outrageous as to the plaintiff as a reprisal against her, not whether the conduct was outrageous as to her husband. Because the defendants had no right to punish plaintiff, the alleged fact that they did so by firing plaintiff's husband makes their conduct extreme or excessive. Consequently, we are of the opinion that plaintiff has alleged outrageous conduct by the defendants as to her and that the district court erred in dismissing her complaint for failure to state a claim upon which relief could be granted.

Because we have determined that plaintiff alleged conduct sufficient to state a cause of action, we must now consider plaintiff's contention that the district court erred in dismissing the complaint as to defendants Martin, Ingram, and Kessler for lack of personal jurisdiction. Plaintiff does not dispute the fact that these defendants were never themselves present in the State of Illinois in connection with this case. However, plaintiff asserts that in alleging that all defendants acted "individually and together" her complaint asserts that Martin, Ingram, and Kessler acted in Illinois through the remaining defendants, and furthermore that Illinois long-arm jurisdiction extends to the three defendants by virtue of the fact that their acts caused an injury to occur in Illinois.

We need not determine whether the complaint in fact was sufficient to assert these facts. We conclude that the district court correctly held that plaintiff's failure to answer the affidavits of Martin, Ingram, and Kessler supporting their motion for dismissal was a failure by the plaintiff to carry her burden of showing personal jurisdiction in the face of the affidavits supporting the motion to dismiss. *See, Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929–30 (6th Cir. 1974).

For the reasons stated above, the judgment of the district court granting dismissal of the complaint against defendants Martin, Ingram, and Kessler for want of personal jurisdiction is AFFIRMED, the judgment of the district court granting dismissal of the complaint as to defendants Naylor, Griffin, DeValle, and Quinn for failure to state a claim upon which relief may be granted is REVERSED and the cause is REMANDED for further proceedings consistent herewith.

ESCHBACH, Circuit Judge, concurring in part and dissenting in part.

The majority's treatment of the question of intentional infliction of emotional distress is a vast departure from the body of substantive Illinois law which we are obli-

gated to follow in this diversity action. The complaint is insufficient under Illinois law for two independent reasons. First, the conduct of which the defendants are accused was not "outrageous," as that term is defined in the Illinois cases. Second, the complaint fails to allege the requisite degree of scienter. I therefore respectfully dissent from the reversal of the district court's order granting defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

Plaintiff alleges that the defendants terminated her husband's highly successful general agency with Massachusetts Mutual Life Insurance Company in retaliation for plaintiff's exercise of guaranteed loan privileges conferred by life insurance policies issued to her by Massachusetts Mutual. Although the complaint refers to a policy of employing threats and coercion to discourage policy holders from exercising their guaranteed loan privileges, the sole conduct that is alleged to be tortious as to *plaintiff* is the retaliatory termination of her husband's insurance agency.

I do not share the majority's perception of the manner in which the district court disposed of this allegation. The district court did not hold that the conduct alleged could *never* state a claim under the theory presented. The district court held that the retaliatory termination in question was not actionable standing alone, nor was it actionable in the context of all the other allegations in the complaint. An analysis of the Illinois cases makes it clear that this was the correct method of assessing the challenged conduct.

The tort of intentional infliction of emotional distress was first recognized in Illinois in *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961). The essential elements of this cause of action are (1) extreme and outrageous conduct, (2) severe emotional distress, and (3) conduct from which the defendant knows severe distress is certain or substantially certain to flow. *Public Finance Corporation v. Davis*, 66 Ill.2d 85, 89–90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976).

In *Knierim*, the Illinois Supreme Court concluded that emotional well-being is worthy of judicial protection, but recognized that it is frequently difficult to calculate the severity of emotional distress. *See* 22 Ill.2d at 84–85, 174 N.E.2d at 162–63. It was therefore necessary to posit some general pleading standards so as to screen out cases in which the emotional distress calculus would be purely conjectural. The *Knierim* court sought to overcome the problem of measuring the victim's emotional distress by making the defendant's *conduct* the paramount issue:

> The unwarranted intrusion must be calculated to cause 'severe emotional distress' to a person of ordinary sensibilities, in the absence of special knowledge or notice. There is no inclination to include all instances of mere vulgarities, obviously intended as meaningless abusive expressions.

> \*   \*   \*   \*   \*   \*

> We are confident, however, that the trial judges in this State will not permit litigation to enter the field of trivialities and mere bad manners.

22 Ill.2d at 86–87, 174 N.E.2d at 163–64 (citation omitted).

Under *Knierim* and its progeny, there are two distinct variants of outrageous conduct which, if properly alleged and proven, may support recovery for intentional infliction of emotional distress. The first variant involves conduct that is abhorrent to the most fundamental societal norms, and has been described as follows:

> [T]he conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous

in character, and so extreme in degree, as to go beyond all possible bounds of decency. . . ."

*Public Finance Corporation v. Davis,* 66 Ill.2d 85, 89–90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976) (quoting comment d to § 46 of the Restatement (Second) of Torts). The paradigm of this variant is *Knierim,* where a widow sued her husband's murderer for the extreme anguish that resulted from (1) the defendant's threat to her that he would murder her husband and (2) the tragic fulfillment of this threat. The salient characteristic of the cases in this category is that they involve conduct so outrageous, even when viewed in the abstract, that a finding of severe emotional distress is entirely reasonable, not merely conjectural. *See, e.g., Knierim, supra; Sherman v. Field Clinic,* 74 Ill.App.3d 21, 29 Ill.Dec. 597, 392 N.E.2d 154 (1979) (in pursuing collection of a debt, defendant threatened members of debtor's family and made persistent use of profane, obscene and abusive language).

The second variant of actionable conduct involves situations in which the defendant had prior knowledge that the victim was particularly vulnerable to the challenged conduct. The "special knowledge or notice" exception was expressly anticipated in *Knierim, see* 22 Ill.2d at 86, 174 N.E.2d at 163. This second variant is illustrated by *Eckenrode v. Life of America Insurance Company,* 470 F.2d 1 (7th Cir. 1972), where an insurance company was accused of using economic coercion to induce a policyholder in dire financial straits to compromise a meritorious insurance claim. In such cases, the factual analysis is expanded to consider (1) the gravity of the conduct, (2) the emotional vulnerability of the victim, and (3) the defendant's knowledge of the victim's vulnerable condition. As in the case of *Knierim*-type conduct, if these three elements are alleged, they provide an appropriate predicate for a finding of severe emotional distress.

Applying either of the two standards of actionable conduct discussed above, it is clear that plaintiff has failed to allege that

defendants' conduct was sufficiently "outrageous." In this case, unlike *Knierim,* the conduct alleged did not exceed all possible bounds of decency and, unlike *Sherman,* it did not involve a persistent pattern of abuse and harassment. Viewed objectively, and in the abstract, the alleged retaliatory termination of plaintiff's husband's insurance agency falls far short of violating any fundamental societal prohibitions.

Nor is there any indication that special circumstances rendered the conduct extremely oppressive. Plaintiff has not alleged that she was particularly vulnerable to the conduct. Indeed, one of the complaint's most glaring deficiencies is its failure to allege any objective manifestations of emotional distress; there is merely a conclusory assertion that she sustained emotional distress.

Regardless of whether the conduct in question is considered in the abstract or in the context of all the other allegations, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Finally, the complaint harbors an additional, equally dispositive flaw. To satisfy *Knierim* and *Public Finance,* there must be an allegation that defendants' conduct was such that it was certain or substantially certain to produce *severe* distress. Plaintiff's complaint merely alleges that the termination of her husband's insurance agency was performed with the intent, or with reckless disregard of the probability of causing "emotional distress." Thus, the allegation as to defendants' state of mind is clearly insufficient.

Accordingly, although I concur with the majority in affirming the dismissal as to defendants Martin, Ingram, and Kessler, for the reasons given above, I would affirm the dismissal as to the other defendants as well.

SWYGERT, Senior Circuit Judge, concurring.

I concur in Judge Peck's opinion with this added comment.

Rule 8(e)(1), Federal Rules of Civil Procedure, provides that "each averment of a pleading shall be simple, concise and direct. No technical forms of pleadings ... are required." Rule 8(a)(2) requires "a short plain statement of the claim showing the pleader is entitled to relief." And Rule 8(f) admonishes that "all pleadings shall be so construed as to do substantial justice." The Supreme Court incorporated the essence of Rule 8 in its statement that the rule merely requires "a short plain statement of the claim that will give the defendants fair notice of what the claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

The policy of the rulemakers was to eliminate the complexities and pitfalls of common law pleading. Professor Moore stated that policy in a nutshell: "Litigation is not an art of writing nice pleadings." 6 Moore's Federal Practice ¶ 2A, at 299 (2d ed.). In other words, the merit of a controversy is more important than the precision of the pleader. This case aptly illustrates why this salutary policy ought to constantly be observed.

I agree with Judge Peck that the allegations in the complaint are sufficient to state a tort claim for severe mental distress caused by the defendants' outrageous conduct.* That kind of actionable wrong has had at least a fifty-year development. Relatively new, the tort is now recognized in Illinois as it is in most other jurisdictions. In those jurisdictions where it has been recognized, the concept has had a history of growth and refinement. That the contours of this kind of wrong are not definitively settled in Illinois is illustrated by the very discussion of that State's appellate decisions indulged in by both Judge Eschbach and Judge Peck.

It is my thinking that it is unfair to cut off litigation at the pleading stage in such circumstances. Dismissal is warranted only when the allegations of a complaint show unequivocally that a plaintiff is not entitled to relief. But when differing inferences can be drawn from raw or conclusory fact allegations, those inferences should militate in favor of the complaint's viability. Reasons for the alleged conduct of the parties can ordinarily be gauged better on discovery or at trial. Also, the effect of such conduct can best be evaluated after a full development of the evidence. In sum, when there is an arguable basis, factually and legally, for recovery, as exists here, the

---

\* The pertinent allegations of the complaint are:

Before and during October 1979, MILLICENT GEIST was married to HERBERT GEIST, ... who was a General Agent for the Company for at least twenty five years, ... and who since at least 1964 was within the Company's top ten general agents in the United States in generating sales for the Company.

... MILLICENT GEIST owned life insurance policies the value of which was in excess of one million, five hundred thousand dollars ($1,500,000.00), issued to her by the Company, ...

All the ... policies provided for guaranteed loan privileges ....

The privileges gave the policy owner the right to borrow the cash value of the policy at a specified rate of interest regardless of the rate of interest charged on the open market.

... Defendants ... engaged in a practice designed to discourage policy owners from exercising their privileges.

The practice included a program of threats and coercion directed against the Company's general agents to compel the general agents to convince policy owners not to exercise their privileges.

... MILLICENT GEIST exercised her privileges under the policies she owned and borrowed two hundred thirty thousand, nine hundred thirty seven dollars ($230,937.00) from the Company.

... [T]he defendants ... caused the termination of HERBERT GEIST as General Agent of the Company in retaliation against MILLICENT GEIST for exercising her privileges under the policies that she owned....

The Defendants' ... conduct, was done with the intent, or with reckless disregard of the probability of causing emotional distress to MILLICENT GEIST.

The Defendants' ... conduct was outrageous.

As [the] proximate cause of Defendants' ... conduct, MILLICENT GEIST suffered severe and extreme emotional distress and loss of income she ordinarily would derive from and through her husband HERBERT GEIST.

case should not be thrown out precipitously by striking the complaint.