Joel GORDON, Plaintiff,

v.

MATTHEW BENDER & COMPANY, INC., a New York corporation, Defendant.

No. 82 C 4570.

United States District Court, N.D. Illinois, E.D.

April 29, 1983.

---

Lionel G. Gross, Freda J. Levenson, Altheimer & Gray, Chicago, Ill., for plaintiff.

Lawrence A. Reich, Philip C. Lederer, Lederer, Reich, Sheldon & Connelly, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

The plaintiff Joel Gordon ("Gordon"), a citizen of Illinois, has brought a twelve-count First Amended Complaint ("complaint") against Matthew Bender & Company, Inc. ("Matthew Bender"), a New York corporation with its principal place of business in New York. The Court has subject matter jurisdiction based on diversity of citizenship and the existence of a federal question. 28 U.S.C. §§ 1331 and 1332. Now before the Court is Matthew Bender's motion to dismiss eight of the twelve counts of the complaint. For the reasons given below, the motion is granted in part and denied in part.

### Facts

The Court here will briefly review the facts common to all counts of the complaint, and will discuss the facts relevant to each particular contested count below.

Gordon began working for Matthew Bender on November 5, 1973, as one of its law book sales representatives in a territory which included parts of Chicago and the surrounding areas. The employment agreement between Gordon and Matthew Bender stated no definite period during which the parties remained obligated to each other. Gordon developed into a commendable employee who reached or exceeded the goals set for him by his employer.

On July 24, 1980, Gordon was informed by his superior at Matthew Bender that his territory would be reduced on September 1, 1980. On October 7, 1980, he was told that he would be terminated if he failed to achieve in his new territory the same sales goals which had been set for the territory he worked in prior to the September 1 change. Thus though Gordon's territory had been diminished, his sales goals remained the same. He did not meet the goals and was fired on January 8, 1981.

Counts IV and V of the complaint allege violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. Count VII alleges that Matthew Bender has failed to pay Gordon commissions due him. Count X alleges an action for an account stated. Matthew Bender has answered these four counts by denying the essential allegations, and has moved to dismiss the balance of the complaint.

Each of the eight counts Matthew Bender challenges here allege causes of action which arguably arise under state law. The parties have not expressly addressed the initial issue of which state's law applies. However, Gordon and Matthew Bender each have relied heavily on Illinois decisions. Further, Gordon is a citizen of Illinois who has worked for Matthew Bender in this state. The Court assumes that Illinois law governs the state law causes of action asserted here.

The standard applied by a federal court in ruling on a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, brought under Fed. R.Civ.P. 12(b)(6), is stated in *Conley v. Gibson,* 344 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957): "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In ruling on Matthew Bender's motion to dismiss, the Court applies this firm principle.

### Count I

In addition to the general allegations described above, Gordon states that "Matthew Bender maliciously manipulated circumstances to make Mr. Gordon's job impossible [and that t]his bad faith conduct of Matthew Bender is actionable . . ." (Plaintiff's Response, at 6). In Count I, Gordon claims to sue under both tort and contract theories for the breach by Matthew Bender of its duty and covenant, implied in law, to deal with Gordon in good faith. He says that in Illinois, "every contract includes a duty of good faith and fair dealing. 'Even though

the express words are absent, performance in good faith will be implied by the court.' (*Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill.App.3d 295, 300, 287 N.E.2d 151, 154, *leave to appeal denied*, 55 Ill.2d 601.)." *Pierce v. MacNeal Memorial Hospital Association*, 46 Ill.App.3d 42, 51, 4 Ill.Dec. 615, 622, 360 N.E.2d 551, 558 (1st Dist.1977).

■ In this case, Gordon and Matthew Bender had an employment contract terminable at will by either party at any time (see discussion and rulings on motions to dismiss Counts II and VI, *infra*). The essence of Gordon's legal argument is that Matthew Bender's alleged breach of the obligation (implied in law) to deal in good faith creates an *independent cause of action*. No decision of which this Court is aware has held this to be true. Instead, the principle of performance in good faith comes into play in defining and modifying duties which grow out of specific contract terms and obligations. It is a derivative principle.

The four cases which Gordon cites (none of which deals with the "good faith" obligation in the context of an at will employment) point to this conclusion. *See Pierce, supra*, 4 Ill.Dec. at 622, 360 N.E.2d at 558 (defendants required by settlement agreement to obtain legal opinion; "good faith and fair dealing" principle is an aid in interpreting a specific contractual obligation); *Stevenson v. ITT Harper, Inc.*, 51 Ill.App.3d 568, 9 Ill.Dec. 304, 310, 366 N.E.2d 561, 567 (1st Dist.1977) (plaintiff fired prior to vesting date for receiving pension benefits; *Pierce* principle "does not aid plaintiff because the record does not suggest that plaintiff's termination was a bad faith effort by ITT Harper to avoid its conditional duty [under the contract] to pay pension benefits."); *Ledingham v. Blue Cross Plan for Hospital Care, Inc.*, 29 Ill.App.3d 339, 330 N.E.2d 540, 548 (5th Dist.1975), *rev'd on other grounds*, 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976) (in a "life and health insurer-insured relationship there is a duty

upon both parties to act in good faith and deal fairly with the other party to the contract.");[1] *Hardin v. Eska Company*, 127 N.W.2d 595 (Iowa 1964) (the defendant granted plaintiff the exclusive right to market items in a specific territory and then began to compete in that same territory, thereby destroying the basis of plaintiff's bargain; "good faith" obligation prevents defendant from interfering with plaintiff's firm contract right).

Thus none of the cases upon which Gordon relies hold that in the context of an employment at will, the obligation to deal in good faith which is implied in law is an independent basis for an action. A very recent decision of the New York Court of Appeals squarely holds that no such cause of action will lie.

In *Murphy v. American Home Products Corp.*, No. 35 (N.Y. March 29, 1983), the plaintiff, whose employment was for no definite duration, was fired. Murphy brought suit alleging several theories for recovery, including a tort action for wrongful discharge and a breach of contract action for the employer's breach of the obligation, implied in law, to deal with an employee in good faith. The court first found that no action for wrongful discharge of an employee at will could be stated under New York law. It then went on to address the plaintiff's assertion

that in all employment contracts the law implies an obligation on the part of the employer to deal with his employees fairly and in good faith and that a discharge in violation of that implied obligation exposes the employer to liability for breach of contract.

Slip op. at 10. While holding that New York law recognizes that an obligation of good faith and fair dealing may be implied in a contract, the court stated:

In such instances *the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which*

---

[1]. The Court notes that *Ledingham* has been criticized and apparently rarely has been followed. *See Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 151 n. 2, 440 N.E.2d 998, 1006 n. 2 (1st Dist.1982).

*would be inconsistent with other terms of the contractual relationship.* Thus, in the case now before us, plaintiff's employment was at will, a relationship in which the law accords the employer an unfettered right to terminate the employment at any time. *In the context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination.* The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent.

Slip op. at 11 (emphasis added).

The decision in *Murphy* strongly suggests that this Court has correctly interpreted the nature of the obligation to deal in good faith, implied in all Illinois contracts. Such an obligation "is in aid and furtherance of other terms of the agreement of the parties." *Id.* It does not create an independent cause of action. *See also Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 150, 440 N.E.2d 998, 1005 (1st Dist.1982) (the good faith and fair dealing principle "is essentially used as a construction aid in determining the parties' intent"; court dismisses tort action based on alleged bad faith termination of employment at will).

Illinois, like New York, does not allow for an action based on a discharge from an employment at will (except in certain circumstances, discussed *infra* with regard to Count VI, which are not applicable here). If the implied obligation to deal in good faith created such a cause of action, it would eviscerate the at will doctrine altogether. *Murphy v. American Home Products, supra.* The Court believes that *Murphy* reflects the decision an Illinois court would reach on these facts.

█ Since Gordon was an at will employee, the duty to deal in good faith was appended to nothing which had independent life. Therefore no cause of action predicated only on the good faith principle may stand, and Count I is dismissed.

## Count II

█ Gordon alleges in Count II that it was "Matthew Bender's policy and practice ... to condition its sales representatives' continued employment on 'acceptable sales performance'" (para. 17). He refers to a letter (Ex. D, attached to the complaint) from Matthew Bender to Gordon placing him on probationary status. This letter states that if Gordon meets his goals, he will be "restored to the same status of acceptable sales performance as other Matthew Bender sales representatives." Gordon alleges that this letter created a contract for continuous employment conditioned upon acceptable sales performance, which Matthew Bender breached by firing him even though he met or exceeded the requirement of acceptable sales performance.

Matthew Bender has moved to dismiss Count II on a variety of grounds, including: (1) this was a contract terminable at will, and therefore Gordon's discharge is not actionable; (2) the contract lacks mutuality and therefore is not actionable; (3) the oral contract is unenforceable under the statute of frauds since it is for an indefinite period. Since the Court finds that this was a contract terminable at will, the other arguments will not be addressed.

Gordon claims that though this was a contract for no definite period, it was not a contract without terms governing its duration. Gordon's length of employment would depend on his "satisfactory performance" or "acceptable sales performance." Therefore, the argument goes, so long as the condition of acceptable performance was being met—and this is a fact issue which precludes the granting of a motion to dismiss, since the Court must accept the plaintiff's allegations as true—the contract could not be terminated. *See Donahue v. Rockford Showcase & Fixture Co.*, 87 Ill. App.2d 47, 230 N.E.2d 278 (2nd Dist.1967) (contract of employment with no definite period not an employment at will; existence of specified condition—contract ter-

minable by either party if shipments fall below $25,000—makes it not a contract terminable at will, but one terminable upon the existence of a particular condition). Gordon relies heavily on *Scaramuzzo v. Glenmore Distilleries, Co.,* 501 F.Supp. 727 (N.D.Ill.1980).

In *Scaramuzzo,* the fired plaintiff alleged that the defendant-employer had promised that Scaramuzzo "would be discharged only for good cause, and [that] he would retain all corporate responsibilities assigned to him as long as he competently executed such responsibilities." *Id.* at 732. Defendant moved for summary judgment on grounds that this was an employment agreement terminable at will. The court denied the motion, stating that "[a] contract that fails to specify the length of the term of employment, but that does set conditions upon which termination may be based, is not terminable at will—it is terminated upon the existence of those conditions." *Id.* Since there existed a fact question as to whether such conditions existed—whether the plaintiff could be discharged only for good cause, and whether he would retain his responsibilities as long as he executed them competently—summary judgment could not be granted.

Gordon argues that there existed a condition to his employment contract with Matthew Bender—"acceptable sales performance"—so that, as in *Scaramuzzo,* a legal claim exists which at the very least precludes a dismissal of this count of the complaint. But Gordon cannot distinguish two other cases precisely on point. In *Buian v. J.L. Jacobs and Company,* 428 F.2d 531 (7th Cir.1970), the court found that the following contract language did not raise any fact issue, and that a contract terminable at will existed: "It is scheduled that your assignment in Saudia Arabia will continue for a period of eighteen (18) months.... It is intended that all staff associates assigned to the Saudi Arabia projects will remain in Saudia Arabia ... throughout the duration of the specified assignments. This of course presumes *satisfactory service* by each associate ..." *Id.* at 532 (emphasis added).

In *Payne v. AHFI/Netherlands, B.V.,* 522 F.Supp. 18 (N.D.Ill.1980), the court construed terms similar to those at issue in *Buian* and also found that a contract at will existed. The duration of the *Payne* contract was to depend on factors such as "individual performance." *Id.* at 22.

*Buian* and *Payne* clearly stand for the proposition that satisfactory or acceptable performance language does not transform a contract with no definite period—one at will—into a contract which cannot be terminated by either party at any time for any reason. The Court finds that these cases control. Further, *Scaramuzzo* is not contrary authority. It is distinguishable on its facts—no discharge except "for good cause" (an objective criterion) has a different meaning, in this employment context, from an employment which lasts as long as performance is "acceptable" (a subjective decision).

Further, two Illinois cases hold that a "satisfactory performance" contract is terminable at will. *See Kendall v. West,* 196 Ill. 221, 63 N.E. 683 (1902) (employment contract lasting as long as employee performed "satisfactory services" may be terminated at any time for any reason); *Vogel v. Pekoc,* 157 Ill. 339, 42 N.E. 386 (1895) (employment agreement "to continue only so long as satisfactory" may be terminated at any time for any reason).

Gordon disparages *Kendall* and *Vogel* as "turn-of-the-century cases" (Plaintiff's Response, at 15). However, it is clear that at least *Kendall* has continuing vitality as it formed the basis of a recent decision of the Illinois appellate court. *Ray v. Georgetown Life Insurance Co.,* 94 Ill.App.3d 863, 50 Ill.Dec. 613, 419 N.E.2d 721 (3rd Dist.1981) (employee serving under one-year personal service contract which could be terminated on thirty days' notice if employee "fails to perform satisfactorily in the judgment of" the employer; termination five days after execution of the employment agreement is not actionable since the employer could fire the employee at any time, citing *Kendall* at 50 Ill.Dec. at 614, 419 N.E.2d, 722.).

In addition, the Illinois courts have shown no disposition to abandon the at will doctrine except in carefully defined areas. *See Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 128, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) (tort of retaliatory discharge "is an exception to the general rule that an 'at will' employment is terminable at any time for any or no cause"; at will doctrine does not apply when employee terminated for alerting police to in-house thievery; this would violate significant public policy favoring citizen cooperation with law enforcement activities); *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 181, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978) (court concludes "that an employer's otherwise absolute power to terminate an employee at will should [not] prevail where that power is exercised to prevent the employee from asserting his statutory rights" to pursue a workers' compensation claim). *And see Lamb v. Briggs Mfg., a Div. of Celotex Corp.,* 700 F.2d 1092, 1094 (7th Cir.1983) (at will employment is the "general universe of cases" to which *Palmateer* and *Kelsay* public policy exceptions apply).

A "condition" of satisfactory or acceptable performance theoretically could be implied in every employment contract. Such an end-run around the at will doctrine would eviscerate it altogether, and the Illinois courts do not seem inclined to do so. The motion to dismiss Count II is granted.

### Count III

Gordon alleges in Count III that as a participant in Matthew Bender's pension plan he was to become fully vested after eight years of employment, but that he was fired ten months before the vesting date. He charges that Matthew Bender breached its duty of fair dealing by its bad faith termination, intended to deprive Gordon of his benefits. The defendant has moved to dismiss Count III on grounds of preemption and failure to state a cause of action. The Court grants the motion on preemption grounds.

Matthew Bender argues that the Employee Retirement Income Security Act ("ERI-SA"), 29 U.S.C. §§ 1001 *et seq.,* provides that a cause of action such as that brought here has been preempted by federal law. Section 1144 of ERISA states:

(a) ... [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan [described in the statute and not otherwise exempt] ...

.    .    .    .    .

(c) For purposes of this section:
(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . .

(emphasis added).

Several points are not in dispute. The parties agree that the preemption question is to be decided by applying § 1144. No one has argued that Matthew Bender's pension plan is not an ERISA plan, that it is not "otherwise exempt," and that the cause of action Gordon alleges in Count III is not a "State law" within the meaning of the statute.

But the parties disagree on the construction to be given to the statute, and the precedential value of the case law interpreting the preemption provisions of ERISA. At the outset the Court notes that the Supreme Court has recently held that the preemption provision must be broadly construed. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (New Jersey statute prohibiting a pension plan from offsetting workers' compensation benefits preempted by ERISA). *See also Bucyrus-Erie Company v. Dept. of Industry, Labor,* 599 F.2d 205 (7th Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980) (complaint that company's benefit plan is sex discriminatory; Wisconsin Fair Employment Act barring sex discrimination would be preempted by ERISA but for saving clause, § 1144(d), exempting from ERISA preemption state statutes which would affect other federal statutes, such as Title VII; court

accepts expansive view of ERISA preemption based on broad language of statute and clear legislative history favoring preemption). *Cf. Amer. Tel. & Tel. Co. v. Merry,* 592 F.2d 118 (2d Cir.1979) (court finds implied congressional exception to ERISA preemption in state court judgment ordering garnishment of employee's pension income to satisfy a divorce obligation; implied exception to ERISA preemption found in traditional federal deference to state regulation of family law matters).

Gordon argues that the cause of action alleged in Count III does not "relate to" Matthew Bender's pension plan and therefore is not preempted. In support of his proposition, he cites two examples of employees fired prior to vesting dates who brought actions under state law to recover pension benefits allegedly due them. *Moore v. Home Insurance Co.,* 601 F.2d 1072 (9th Cir.1979); *Savodnick v. Korvette's, Inc.,* 488 F.Supp. 822 (E.D.N.Y.1980). However, since the courts in *Moore* and *Savodnick* never addressed the issue of preemption, these cases are not precedent to support Gordon's contention.

Gordon also cites *Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388 (E.D. Cal.1981), for the proposition that his state law cause of action is not preempted by § 1144. In *Provience,* the court found that the plaintiff's state law actions brought against a pension fund for fraud, bad faith, and the intentional infliction of emotional harm were not preempted by ERISA. The court rested its decision on the theory that "where the state law has only an indirect effect on the plan *and* where it is one of general application which pertains to an area of important state concern, the court should find there has been no preemption" (emphasis in original). Finding the two steps met on the facts before it, the court denied the motion to dismiss. *Id.* at 391. No court has cited *Provience* for this proposition. Further, the theory underlying *Provience* was implicitly rejected in a carefully written opinion from the Eighth Circuit.

*Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), looked to the Supreme Court's *Alessi* decision in finding that a state law claim was preempted by ERISA. The plaintiffs in *Dependahl* alleged that the defendants tortiously interfered with rights guaranteed under certain ERISA plans. The Eighth Circuit concluded that Congress had unmistakably intended to "occupy the field" of employee benefit plans, and that ERISA preempts state laws which either directly *or* indirectly relate to a plan. The court squarely rejected the plaintiffs' argument that their state law claim would not cause substantial damage to the overall purpose of ERISA, and therefore it should not be preempted.

> This argument, however, misses the point. *If Congress has already provided a remedy for the violation of the former executives' benefit plans, then once Congress has expressed its intention to occupy the field, the state law is preempted, regardless of whether or not a conflict exists which involves a direct interference by the state law with the substantive federal legislation.* Here, Congress has provided a remedy for the wrong allegedly done the former executives by [one of the defendants]. 29 U.S.C. § 1140 (1976) provides, in relevant part:
>
>> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. * * * The provisions of section 1132 of this title shall be applicable in the enforcement of this section.
>
> Congress has preempted state law claims of tortious interference with employee

benefit plans. The district court's judgment in favor of the former executives on this issue is reversed.

653 F.2d at 1215–16 (emphasis added).

Gordon attempts to distinguish *Dependahl* by arguing that there, the cause of action "related to" the ERISA plan because the defendants were alleged to have altered the plan, while in this case Gordon is not alleging any such alteration of the plan.[2] This ignores the clear holding of *Dependahl*. Congress has "occupied" the pension benefits field, and has provided a remedy for Gordon: it is unlawful

> for any person to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . .

29 U.S.C. § 1140. This is what Gordon complains of in Count III. *Dependahl* clearly shows that Count III is preempted by ERISA, and the motion to dismiss Count III is granted.

### Count VI

Gordon attempts to avoid the at will doctrine in yet another way. He states that he received a letter from Matthew Bender on March 22, 1979, which states:

> As a Sales Representative for Matthew Bender & Co. you are paid on a straight commission basis. You are expected to operate out of your home and as such, set aside part of your home as an office wherein you are to maintain supplies, books, records, etc. with which to discharge your responsibilities. A necessary part of these responsibilities includes fre-

quent use of your telephone in your home for which you are not specifically reimbursed.

(Ex. H, attached to the complaint). Gordon established, equipped, and maintained an office, incurring expenses of $8,410. He states that he "expended this sum in reliance upon the implicit promise of continued employment by Matthew Bender" (para. 19).

In Count VI, Gordon sues for breach of an implied contract created by Matthew Bender's promise of continued employment and Gordon's detrimental reliance on it. He prays for relief including an award of $8,410; an injunction ordering Matthew Bender to put him back to work; an award of $70,000 for lost compensation; punitive damages; and attorneys' fees.

Matthew Bender has moved to dismiss Count VI for failure to state a cause of action. Two things must be mentioned at the outset. First, Gordon agrees that his contract for employment stated no definite term. Second, Gordon has not alleged that any general promise of continuous employment was made to him. He claims that Ex. H embodies the promise upon which he relied to his detriment.

A contract with no definite term is, of course, terminable at will. There are three exceptions: (1) the firing contravenes public policy (*Palmateer, supra*); (2) the employee is terminated in violation of particular conditions stated by the parties (*Donahue v. Rockford Showcase & Fixture Co.*, 87 Ill.App.2d 47, 230 N.E.2d 278 (2nd Dist. 1967); and see cases discussed *supra* relating to Count II); and (3) "Under certain

---

**2.** In fact, Gordon misreads *Dependahl*. Only one of the three plaintiffs in that case (Calhoun) asserted that his rights to severance payments under an ERISA plan were affected by the defendants' alteration of that plan. The other two plaintiffs (Healy and Dependahl) were not affected by the defendants' alteration of the severance pay plan. 491 F.Supp. 1188, 1192–93 (E.D.Mo.1980). Therefore, the causes of action brought by Healy and Dependahl under Missouri law for tortious interference with the severance payment plan are on all fours with Gordon's Count III. The reasons for the Eighth Circuit's finding Healy and Dependahl's

claims preempted are indistinguishable in any respect from this Court's finding that Gordon's cause of action is preempted.

Further, all three plaintiffs in *Dependahl* brought tortious interference claims with regard to a second ERISA plan providing for life insurance benefits. This second plan was not alleged to have been altered at all: the defendants simply refused to acknowledge that all three plaintiffs were beneficiaries under the plan. The preemption of the plaintiffs' tortious interference claims focusing on the life insurance plan is, again, indistinguishable from this Court's disposition of Count III.

circumstances, a clear and definite oral agreement for permanent employment based on sufficient consideration may be enforced" even where the agreement does not mention a definite term. *Titchener v. Avery Coonley School,* 39 Ill.App.3d 871, 350 N.E.2d 502, 507 (2nd Dist.1976). "Sufficient consideration" means consideration in addition to the mere performance of regular services required by the employment agreement itself. *Ryan v. J.C. Penney Co., Inc.,* 627 F.2d 836, 837 (7th Cir.1980) (applying Indiana law).

■ Gordon cites *Allied Equipment Co. v. Weber Engineered Products,* 237 F.2d 879 (4th Cir.1956) (interpreting Virginia law), for the proposition that though consideration in addition to the mere performance of regular services is required, *see Ryan v. J.C. Penney Co., Inc., supra,* the fact that Gordon expended $8,410 in equipping an office in his home shows consideration in addition to the performance of regular services.

Gordon has cited *Allied* for a proposition which does not support the theory presented in Count VI. In *Allied,* the plaintiff was given an exclusive wholesale distributorship by the defendant covering 85 counties in Virginia. The agreement had no fixed duration. In four years the plaintiff spent large sums to increase the number of dealers carrying the defendant's products from four or five in 1949 to more than 100 in 1953. Also, the plaintiff entered into a 15 year lease in 1953 at the rate of $500/month to allow it to continue to perform under its agreement with the defendant, and this was done with the defendant's knowledge. Late in 1953, the defendant terminated the agreement.

Gordon is correct that *Allied* is a case where the consideration included substantial capital expenditures in addition to the performance of services. However, even if this Court were to equate the huge capital expenditures of the *Allied* plaintiff with Gordon's $8,410 acquisition of telephones and office supplies to be used in his home, *Allied* provides no support. In that case the issue was not whether the expenditure of funds was sufficient consideration to support a *permanent contract:* the issue was whether the plaintiff was entitled to the continuation of the distributorship agreement *for a reasonable period of time* to allow it to recoup its expenditures made in alleged reliance on the defendant's promises. In Count VI Gordon does not seek the continuation of his employment for a reasonable period of time to allow him to recoup his $8,410 investment. Instead, he wants the Court to find that his period of employment is permanent. *Allied* supports no such cause of action.

Further, *Plaskitt v. Black Diamond Trailer Company,* 209 Va. 460, 164 S.E.2d 645 (Va.1968), does not support even the limited result of *Allied. Plaskitt* (also applying Virginia law) distinguished *Allied* in holding that plaintiffs, who had acted for two years as the exclusive railway sales agents for the defendant prior to being terminated, and who spent more in expenses than they made in commissions for that period, had no cause of action to recover even the reasonable value of their services and their out-of-pocket expenses.

Two Illinois cases determine the issue presented by Count VI. In *Titchener, supra,* a teacher left a tenured position at one school to take an appointment at the defendant school. She received a one year appointment which was renewed by the school for several years, but eventually she was fired. The plaintiff "stated that before she agreed to accept the offer defendant Malach [the school's headmaster] told her 'Your future is here at Avery Coonley and I hope it will be for many years to come.'" *Id.* 350 N.E.2d at 506. The court accepted the plaintiff's version of the conversation as being true for purposes of deciding the motion for summary judgment, but found that neither was there a clear and definite oral agreement for permanent employment, nor did there exist sufficient consideration to support the defendant's promise: the fact that the plaintiff gave up a tenured position did not show "a special bargained for detriment to plaintiff as consideration for the alleged promise." *Id.* 350 N.E.2d at 507.

Gordon's case is a good deal weaker than the plaintiff's case in *Titchener*. There, the plaintiff alleged a promise which mentioned future employment for "many years to come." Here, the letter on which Gordon relies mentions nothing about the future, and nothing can be inferred regarding future employment. Second, the teacher claimed she gave up a secure employment position, while Gordon alleges he spent $8,410 for general office supplies. If the detrimental reliance in *Titchener* was not a sufficient substitute for consideration, then the negligible amount complained of by Gordon cannot be so either.[3]

The second Illinois case which is determinative is *Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill.App.2d 231, 161 N.E.2d 875 (1st Dist.1959). *Heuvelman*, a case with facts remarkably similar to those involved here, featured an oral agreement with no specified duration calling for the plaintiff to operate as a regional sales representative for the sale of defendant's electrical and radio equipment. The plaintiff claimed that he had been offered a 25% interest if he would join a competitor's business, but that the president of the defendant told him that their arrangement was a permanent one. Some years later the plaintiff was fired. The appellate court affirmed the grant of summary judgment for the defendant on the grounds that as a matter of law no adequate consideration was shown, and that to support such an action there had to be "definite and certain mutual promises" of permanent employment. *Id.* 161 N.E.2d at 878. Just as in *Heuvelman*, both requirements are missing from Gordon's Count VI.[4]

Gordon attempts to distinguish *Heuvelman* and *Titchener*. He argues that since these cases were decided on motions for summary judgment rather than dismissals of the complaints for failure to state causes of action, they are not precedent for this motion brought under Fed.R.Civ.P. 12(b)(6). Gordon is incorrect. While these cases do deal with summary judgment motions, the courts decided that as a matter of law the actions could not proceed. Gordon has not alleged an oral promise (as in *Heuvelman* and *Titchener*) which would require discovery for the resolution of one branch of the two branch test: whether the agreement was "clear and definite." Instead, he has presented to the Court as an exhibit to his complaint the communication on which he depends. Not only is it not "clear and definite"—it says nothing whatsoever about the duration of his employment, permanent or otherwise. Further, cases such as *Heuvelman*, *Titchener*, *Ohio Table Pad*, and *Edwards*, which demonstrate that a plaintiff's giving up job opportunities altogether is not sufficient consideration, surely show that the expenditure of minimal funds by Gordon also is not sufficient consideration.

The Court has found no case support for Gordon's position. Count VI is dismissed

---

**3.** Other cases show that Gordon's expenditure of $8,410 will not constitute adequate consideration to change this at will employment to a permanent one. *Ohio Table Pad Co. of Indiana, Inc. v. Hogan*, 424 N.E.2d 144 (Ind.App. 1981) (giving up of job, business, or profession, or moving family to new location, done in reliance on understanding of permanent employment is not sufficient consideration); *Edwards v. Kentucky Utilities Co.*, 286 Ky. 341, 150 S.W.2d 916 (Ky.1941) (same). *Cf. Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 511, 65 Ill.Dec. 137, 149, 440 N.E.2d 992, 1004 (1st Dist.1982) (explicit guarantee of permanent employment if employee gave up an attractive job offer is sufficient consideration); *Molitor v. Chicago Title & Trust Co.*, 325 Ill.App. 124, 59 N.E.2d 695 (1st Dist.1945) (plaintiff's giving up profitable law practice in New York in order to move to Chicago in reliance on promise of permanent employment is sufficient considera-

tion). *And contrast Jones v. Stoneware Pipe Co.*, 277 Ill.App. 18 (4th Dist.1934) (employee's release of personal injury claim against his employer in exchange for promise of permanent employment is sufficient consideration; express contract with new bargained for terms is made).

**4.** The "consideration" analysis in *Heuvelman* has been criticized in *Martin v. Federal Life Ins. Co.*, *supra*, 65 Ill.Dec. at 148, 440 N.E.2d at 1003. However, the Court notes that *Martin* was a case where the parties' intention to make a lifetime employment contract was clear. Thus it is distinguishable from the facts in *Heuvelman* and in the case at bar. The Court finds that on these facts, *Heuvelman* remains good law. Further, the Court notes that *Titchener* was not cited by the *Martin* court.

for failure to state a claim upon which relief may be granted.

### Count VIII

In Count VII, Gordon has brought a breach of contract action for unpaid commissions allegedly due him, and Matthew Bender has filed its answer denying this claim. Count VIII incorporates the bulk of Count VII, but raises a slightly different issue. Gordon's commission agreement with Matthew Bender theoretically may preclude his recovery under Count VII because, for example, the agreement states that commissions were payable "at the time of the shipment of each volume" (para. 22, Count VIII), and Gordon was no longer an employee at the time of shipment and therefore had no direct right under the agreement to the commissions. However, in Count VIII Gordon alleges that Matthew Bender terminated him in "a bad faith attempt to deprive him of very substantial commissions which were to become payable to him" (para. 24, Count VIII).

Matthew Bender moves to dismiss Count VIII on two basic grounds: since the employment was one at will, the existence of an obligation of good faith dealing cannot prevent the termination; and since Count VII seeks recovery of the same thing as Count VIII, it is duplicative. Both Gordon and Matthew Bender discuss whether this Count VIII sounds in tort, contract, or both. The Court finds it unnecessary to untangle this web at this stage, since the motion to dismiss must be denied.

The law seems fairly clear that an employee at will may not be deprived of commissions (in large part "earned" prior to separating from the employer) by a discharge made in bad faith and intended to deprive the employee of the commissions. *Heuvelman v. Triplett Electrical Instrument Co., supra,* 23 Ill.App.2d 231, 161 N.E.2d 875, 878. *See also Buysse v. Paine,*

*Webber, Jackson & Curtis, Inc.,* 623 F.2d 1244, 1249 (8th Cir.1980) (*dictum*) (applying Minnesota law); *Rees v. Bank Building and Equipment Corporation,* 332 F.2d 548, 550 (7th Cir.), *cert. denied,* 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964) (applying Missouri law); *Manuel v. Intern. Harvester Co.,* 502 F.Supp. 45, 51 (N.D.Ill.1980) (applying Illinois law).

Neither of Matthew Bender's arguments undercut the legal validity of Count VIII. The existence of an at will employment does not preclude this count. In fact, it would seem to be an essential component of this cause of action under the case law.[5] Further, for the reasons stated above the Court finds that Counts VII and VIII are not duplicative but allege different theories of recovery. The motion to dismiss Count VIII is denied.

### Count IX

Gordon brings Count IX as an action for "unjust enrichment," claiming that under the law of quasi contract he is entitled to recover his accrued and accruing pension benefits, plus commissions due him for sales consummated prior to his termination, since Matthew Bender would be unjustly enriched were it permitted to keep these amounts.

Matthew Bender moves to dismiss Count IX. It states that the action as to the pension benefits is preempted by ERISA, and that Illinois law does not permit a cause of action in quasi contract where an express contract exists. For the reasons stated above with regard to Count III, Matthew Bender is correct that the claim for the pension benefits is preempted. In addition, Count IX fails to state a cause of action with respect either to the commissions or the pension benefits.

The parties agree that the governing law is stated in *Industrial Lift Truck v. Mitsubishi Intern.,* 104 Ill.App.3d 357, 60 Ill.Dec.

---

**5.** The Court's analysis in Count I, *supra,* concerning the viability of actions alleging breaches of the duty of good faith, is in no way inconsistent with the holding that Count VIII states a cause of action for breach of the good faith obligation. Here, the good faith action is predicated on a contract right with independent validity: Gordon's right to receive commissions for work performed.

100, 432 N.E.2d 999, 103 (1st Dist.1982): "The general rule is that no quasi contractual claim can arise when a contract exists between the parties concerning the *same subject matter* on which the quasi contractual claim rests. (*See La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill.2d 375, 12 Ill.Dec. 565, 370 N.E.2d 188, *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978); *Goodman v. Motor Products Corp.,* (1959) 22 Ill.App.2d 378, 161 N.E.2d 31.)" (emphasis added).

However, Gordon and Matthew Bender disagree about the meaning of the term "same subject matter." Gordon concedes that there are express agreements concerning commissions and pension benefits. But he argues that since the commission agreement "is silent regarding commissions due on books sold during his employment but not delivered until later [,and] the pension plan does not speak about any payment of accrued benefits after a termination to avoid vesting" (Plaintiff's Response, at 28), these subject matters are not covered.

■ Gordon's argument demonstrates a fundamental misunderstanding of the nature of an action in quasi contract. His position is predicated on the belief that if an express contract is silent as to a particular matter or provision, then an action in quasi contract will lie when a dispute arises as to this matter. This is not the law.

In *La Throp, supra,* the plaintiffs sought by way of a quasi contract action to recover interest being held by the defendants which had been earned from use of the plaintiffs' funds. The Illinois Supreme Court found there was "no express provision in the contract indicating that the plaintiffs intended that the defendant should segregate the advance funds from its general account, nor is there any provision requiring defendant to pay plaintiffs earnings on such funds." 12 Ill.Dec. at 569, 370 N.E.2d at 192. The court held that the plaintiffs had failed to state a claim for unjust enrichment. "It has been pointed out that 'the absence of a provision to pay interest on the impoundment funds is equivalent to an agreement that it should not be paid.... [W]here

there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.' (*Brooks v. Valley National Bank* (1976), 113 Ariz. 169, 174, 548 P.2d 1166, 1171.)" 12 Ill.Dec. at 572, 370 N.E.2d at 195.

This is the only common sense result. If parties enter into an agreement, they choose to be bound by its terms. The failure to provide for other terms may be intentional, or may be due to oversight. But in any case, this is a matter of contract construction in an action for breach of an express contract. An action sounding in quasi contract will not lie.

Gordon's argument was squarely rejected in *Industrial Lift Truck, supra.* An express agreement governed the relationship between Industrial Lift and Mitsubishi. After Mitsubishi terminated the contract, Industrial Lift brought an action sounding in quasi contract on the grounds that it had performed services for Mitsubishi but had not been paid for them. The court found that an action in quasi contract would not lie. Though no term in the express agreement between the parties dealt with the issue raised by the plaintiff, the subject matter of compensation clearly was covered by the contract.

Gordon's like attempt to equate "subject matter" and "contract provision or term" has no support. His rights to commissions and pension benefits are covered by the express agreements governing "the relationship of the parties." *La Throp, supra,* 12 Ill.Dec. at 572, 370 N.E.2d at 195, quoting *Brooks v. Valley National Bank, supra.* No cause of action for quasi contract will lie.

■ Gordon has confused the issue by asserting that Matthew Bender "misapprehends Mr. Gordon's right under the Federal Rules of Civil Procedure [8(e)(2)] to plead in his complaint alternative legal grounds for recovery" (Plaintiff's Response, at 29). Such alternative claims might be stated if in Count IX Gordon alleged that no express agreement existed with regard either to commissions or pension benefits. Instead

he has pleaded the opposite. Paragraph 17 of Count IX states that Gordon was made a participant in Matthew Bender's pension plan. Paragraph 20 states that Gordon and Matthew Bender entered into a commission agreement, and attached as Exhibit J to the complaint is a copy of this agreement for 1980. Gordon has alleged the existence of express contracts covering the same subject matters which are the basis of his quasi contract claims. Count IX fails to state a claim for which relief may be granted and therefore it is dismissed.

### Count XI

Gordon's Count XI alleges the basic underlying facts, and goes on to state:

17. Matthew Bender's termination of Mr. Gordon was motivated by malice and was intended to, and did, inflict emotional harm upon Mr. Gordon.

18. As a result of the malicious termination, Mr. Gordon has suffered, and suffers, a profound loss of self-esteem, mental depression, and multiple somatic repercussions therefrom.

The defendant has moved to dismiss Count XI for failure to state a claim of intentional infliction of emotional distress upon which relief may be granted.

▇▇▇ Matthew Bender states that to survive a motion to dismiss, a plaintiff bringing such a cause must allege actions which are extreme, outrageous, and severe. *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1977). This is a correct statement of the law, but does not by itself answer the question of whether a complaint can make it past the pleading stage.

The Seventh Circuit recently held that a cause of action for intentional infliction of emotional distress did survive a motion to dismiss. *Geist v. Martin,* 675 F.2d 859 (7th Cir.1982). Geist complained that the defendants' "conduct, was done with the intent, or with reckless disregard of the probability of causing emotional distress to Millicent Geist. The defendants' . . . conduct was outrageous. As (the) proximate cause [sic] of Defendants' . . . conduct, Millicent

Geist suffered severe and extreme emotional distress. . ." *Id.* at 865, n. * (Swygert, J., concurring).

Gordon too has alleged that Matthew Bender acted with intent to inflict emotional harm upon him, and his allegations of malice and profound mental and physical harm are equivalent to Geist's allegations of outrageousness and severe emotional distress. Count XI meets the requirements of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The motion to dismiss is denied.

### Count XII

Finally, as the last count of his twelve-count complaint Gordon has brought an action for an accounting in which he claims that Matthew Bender has not sent him the weekly and monthly sales reports which would allow him to determine exactly what commissions are due him.

Matthew Bender has moved to dismiss Count XII, stating that since these documents clearly would be relevant to Gordon's Count VII, alleging a breach of contract for unpaid commissions—Count VII being one of the four counts which Matthew Bender has answered—the information would be discoverable through Fed.R.Civ.P. 34. Gordon has responded that if Matthew Bender would agree to furnish these documents during discovery, he would stipulate to the dismissal of Count XII. In an effort to cut through this Gordian knot, the Court hereby orders Matthew Bender to produce these documents for Gordon's inspection within 28 days of this order, and dismisses Count XII.

THEREFORE IT IS ORDERED that

1. The defendant Matthew Bender's motions to dismiss Counts I, II, III, VI, IX, and XII are granted.

2. The motions to dismiss Counts VIII and XI are denied. Matthew Bender is ordered to answer Counts VIII and XI within ten days.

3. Matthew Bender is ordered to produce for Gordon's inspection, within 28 days, the weekly and monthly sales reports relating to sales made by Gordon.

4. A status hearing is set for May 11, 1983, at 9:45 a.m. The parties are ordered to submit at this status hearing a jointly drafted and mutually agreed upon discovery plan and schedule listing dates for the exchange of documents and for filing and answering interrogatories, and further listing the names of those persons whom each party plans to depose and dates for the taking of these depositions.

IT IS SO ORDERED.