**ALLIED VISION GROUP, INC., Plaintiff,**

v.

**RLI PROFESSIONAL TECHNOLOGIES, INC., Defendant.**

**No. 95 C 3783.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 13, 1996.

Mark L. Yeager, Brent R. Austin, McDermott, Will & Emery, Chicago, IL, for plaintiff.

James Kenneth Borcia, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

Defendant RLI Professional Technologies, Inc. ("RLI") moves the court to dismiss Count II of the Amended Complaint filed by Plaintiff Allied Vision Group, Inc. ("Allied") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons set forth below, the court grants RLI's motion to dismiss.

### *Background*

In ruling on this motion to dismiss the court "accept[s] as true the factual allegations of the complaint." *Lashbrook v. Oerkfitz,* 65 .F.3d 1339, 1343 (7th Cir.1995) (citation omitted). According to Allied's Amended Complaint, both Allied and RLI deal in eyeglasses and other ophthalmic goods. (Am.Complaint ¶ 4.) In 1992 RLI told Allied that RLI wanted to acquire a company that manufactured and distributed ophthalmic goods, which until then RLI had purchased regularly from Allied. (Am.Complaint ¶¶ 5–6.) In October, 1992, Allied and RLI entered into an agreement under which Allied would introduce RLI to such a company, and RLI would pay Allied a "finder's fee" in the event that RLI purchased that company. (Am.Complaint ¶ 8.) Under the terms of the agreement,

> The [finder's] fee shall be payable at the closing of the sale, if RLI purchases or obtains an option to purchase the business presented by [Allied] within one year of presentation by [Allied]. If the business opportunity presented by [Allied] is pending at the end of one year, this agreement shall automatically be extended for the necessary time duration until a final determination regarding the purchase has been made by RLI.

(Am.Complaint, Ex. A, ¶ 3.)

At the time the agreement was executed, in October, 1992, Allied introduced RLI to Target Industries ("Target"), a wholesaler of optical supplies. (Am.Complaint ¶¶ 7, 10.) Between October, 1992, and June, 1994, RLI conducted extensive discussions and negotiations with Target. Among other things, RLI had Target's stock appraised, toured Target's facilities, and reviewed Target's financial performance. (Am.Complaint ¶¶ 11–14.) In June, 1994, RLI and Target signed a "Letter of Intent" to merge, and in May, 1995, RLI purchased Target. (Am.Complaint ¶¶ 15, 20.) At all times between October, 1992, and May, 1995, Allied believed that negotiations continued between RLI and Target; and Allied communicated this belief to RLI. Relying on this belief, Allied refrained from investigating other potential acquirors of Target. (Am.Complaint ¶¶ 16–18.)

In November, 1994, RLI told Allied that RLI would refuse to pay Allied its finder's fee on the ground that "RLI initially aban-

doned its interest in the acquisition of Target Industries in June of 1993." This appears to be the first time RLI took the position that it had abandoned its interest in Target at any time between October, 1992, and May, 1995. (Am.Complaint ¶¶ 19, 22.)

Count I of Allied's Amended Complaint alleges that RLI breached its agreement with Allied by refusing to pay Allied a finder's fee. (Am.Complaint ¶ 26.) In particular, Allied alleges that negotiations between RLI and Target were continuously "pending" from the time Allied introduced RLI to Target in October, 1992, to the time RLI and Target merged in May, 1995. (Am.Complaint ¶ 25.)

Count II of Allied's Amended Complaint, entitled "Unjust Enrichment," alleges that Allied conferred valuable benefits on RLI by refraining from introducing Target to any other entities that may have been interested in purchasing Target. Allied's forbearance in this regard enhanced RLI's bargaining position with Target because Allied was no longer seeking purchasers who might compete with RLI for the opportunity to acquire Target. (Am.Complaint ¶ 29.) Allied's forbearance stemmed from its belief that RLI was engaged in continuous negotiations with Target from the time of their initial meeting to the time of their merger, and that Allied ultimately would be compensated for its forbearance with a finder's fee under the terms of the agreement. If, contrary to Allied's belief, negotiations between RLI and Target ceased at some point, then Allied and RLI were no longer bound by the agreement. In that case, Allied's forbearance conferred valuable benefits upon RLI in reliance upon RLI without payment or compensation to Allied. (Am.Complaint ¶ 30.) Count II alleges that RLI knowingly, wilfully, intentionally and unfairly accepted and enjoyed the benefit of Allied's continued forbearance, and that it would be inequitable for RLI to retain such benefits without adequately and fully compensating Allied. (Am.Complaint ¶¶ 31–33.)

### Analysis

■ RLI moves the court to dismiss Count II of Allied's Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit." *United States v. Brickman*, 906 F.Supp. 1164, 1167 (N.D.Ill.1995) (citing *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990)). The court will dismiss a claim only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chaney v. Suburban Bus Div.*, 52 F.3d 623, 627 (7th Cir. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). When ruling on a motion to dismiss, the court "accept[s] as true the factual allegations of the complaint and draw[s] all reasonable inferences in favor of the plaintiff[ ]." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1343 (7th Cir.1995) (citing *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990)).

■ RLI argues—and the court agrees— that Allied cannot state a claim for unjust enrichment in Count II, because Allied admits that a contract governed the relationship between Allied and RLI with respect to the acquisition of Target. (*See* Am.Complaint ¶ 8 (alleging agreement); *id.* ¶ 28 (incorporating ¶ 8 into Count II).) The Supreme Court of Illinois has held unequivocally that "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 68 Ill.2d 375, 12 Ill.Dec. 565, 572, 370 N.E.2d 188, 195 (1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978). Citing *La Throp*, the Seventh Circuit has stated with equal force that "[u]nder Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007 (7th Cir. 1985).

In this case, Allied and RLI entered into an agreement under which Allied would in-

troduce RLI to companies that RLI might acquire, and RLI would pay Allied a "finder's fee" in the event of such an acquisition. (Am.Complaint ¶ 8.) Under the agreement, RLI would pay the finder's fee if RLI purchased or obtained an option to purchase the company within one year of the date that Allied introduced the company to RLI. (Am.Complaint, Ex. A, ¶ 3.) The only issue in the case, reflected in Count I of Allied's Amended Complaint, involves contract interpretation. In a nutshell, it is:

> whether, as Allied alleges, the opportunity to purchase Target was pending at the end of one year, automatically extending the finder's fee agreement—meaning that RLI violated the agreement by refusing to pay Allied a finder's fee, or, alternatively,

> whether, as RLI claims, the opportunity to purchase Target was not pending at the end of one year, terminating the finder's fee agreement with respect to Target—meaning that RLI did not violate the agreement by refusing to pay Allied a finder's fee.

Because "a specific contract [governed] the relationship" between Allied and RLI, the court concludes that "the doctrine of unjust enrichment has no application" in this case. *La Throp*, 12 Ill.Dec. at 572, 370 N.E.2d at 195; *see also Heinold*, 766 F.2d at 1011. That the agreement between Allied and RLI was a contract is not in dispute. That the agreement governed the relationship between the parties, including Allied's right to a finder's fee, is equally clear to the court. Therefore, the doctrine of unjust enrichment has no application in this case and the court dismisses Count II of Allied's Amended complaint.

■ In an effort to avoid the logic of *La Throp* and *Heinold*, Allied makes two major arguments. First, Allied argues that its claim for unjust enrichment is based on the behavior of the parties after the agreement terminated. Even if this were true, however, the logic of *La Throp* and *Heinold* would still apply. As the Seventh Circuit explained in *Heinold:*

> The fact that the agreement between [the parties] did not explicitly provide for allocation of customers or commissions upon termination does not allow [the plaintiff] to now invoke a quasi-contractual remedy. In entering the agreement, [the plaintiff] assumed the risk of losing customers to [the defendant] in return for [the defendant's] trading services. [The plaintiff] could have, but did not provide for the allocation of this risk under the terms of the contract. [The plaintiff] may not unilaterally alter the terms of the contract by now claiming unjust enrichment.

*Id.* at 1011 (citations omitted).

In this case, the agreement between Allied and RLI called for RLI to pay Allied a finder's fee in the event that RLI acquired a company introduced to RLI by Allied. (Am.Complaint ¶ 8.) The agreement specified that Allied would pay the fee only if RLI purchased or obtained an option to purchase the company within one year of the date that Allied introduced the company to RLI; if the business opportunity presented by Allied was pending at the end of the one year, the finder's fee agreement would be extended automatically. (Am.Complaint, Ex. A, ¶ 3.) The agreement could have provided that if RLI *ever* purchased a company first identified by Allied, then RLI would pay Allied a finder's fee. Instead, the agreement placed an explicit time limit on Allied's right to collect a finder's fee from RLI, a time limit which was extendible under certain circumstances. Likewise, the agreement could have provided that if RLI purchased a company first identified by Allied *after* the time limit expired, then RLI would reimburse Allied for the value of Allied's services during the time the agreement was in effect, or after the agreement terminated, or both. But the agreement made no such provision. Clearly, Allied assumed the risk that the agreement would not automatically extend, that RLI would acquire a company introduced to it by Allied after the agreement terminated, and that Allied would not be reimbursed for its services. Any other interpretation would render meaningless the explicit time limit written into the agreement. Having written a time limit into the agreement, provided for its possible extension, provided for payment of a finder's fee within the time limit (or its extension), and made no provision for any

kind of payment outside the time limit (or its extension), Allied "may not unilaterally alter the terms of the contract by now claiming unjust enrichment." *Heinold,* 766 F.2d at 1011 (citations omitted); *see also Industrial Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.,* 104 Ill.App.3d 357, 60 Ill.Dec. 100, 103, 432 N.E.2d 999, 1002 (1982) ("Quasi-contract is not a means for shifting a risk one has assumed under contract."), *cited in Heinold,* 766 F.2d at 1011–12.[1]

■ Second, Allied argues that it may plead breach of contract and unjust enrichment as alternative theories under Rule 8(e)(2) of the Federal Rules of Civil Procedure, which allows plaintiff to "set forth two or more statements of a claim or defense alternately or hypothetically." However, Rule 8(e)(2) allows inconsistency between claims, not inconsistency within a single contract claim. Thus, Rule 8(e)(2) would permit Allied to claim in Count I that there was an agreement and RLI violated it and then to claim in Count II that there was no agreement at all and that RLI was unjustly enriched by Allied's services. But Rule 8(e)(2) does not permit Allied to claim within a single count that there was an agreement and that Allied was unjustly enriched. *Gordon v. Matthew Bender and Co.,* 562 F.Supp. 1286, 1298–99 (N.D.Ill.1983). For reasons explained above, that approach was foreclosed by the Seventh Circuit's holding in *Heinold.* Any possible doubt on the matter is dispelled by the fact that in *Heinold* the Seventh Circuit cited with approval the *Gordon* case, which expressly rejected the Rule 8(e)(2) argument that Allied now posits. *Heinold,* 766 F.2d at 1011, citing *Gordon,* 562

F.Supp. at 1298–99. In short, Count II fails to state a claim upon which relief can be granted, and Rule 8(e)(2) does not alter that conclusion. To the extent that cases cited by Allied[2] hold otherwise, they are inconsistent with *Heinold,* and this court declines to follow them.

### Conclusion

For the reasons set forth above, the court grants defendant's motion to dismiss Count II of plaintiff's Amended Complaint. The court instructs the parties to discuss settlement before the next court date.

---

1. The cases cited by Allied on this point are easily distinguished. In *Business Development Services, Inc. v. Field Container Corp.,* 96 Ill. App.3d 834, 52 Ill.Dec. 405, 422 N.E.2d 86 (1981), "defendant permitted plaintiff to continue to perform services" after the contract terminated. *Id.* 52 Ill.Dec. at 414, 422 N.E.2d at 95. Here, Allied did not perform any concrete services after the contract terminated; and Allied's mere "forbearance" is not enough to escape the compelling logic of *La Throp* and *Heinold.* In *Louis Glunz Beer, Inc. v. Martlet Importing Co.,* 864 F.Supp. 810 (N.D.Ill.1994), the agreement between the parties covered only one aspect of their relationship, while "the remainder of their relationship ... was governed by custom and practice." *Id.* at 818. Here, Allied and RLI

clearly intended for the agreement to cover the entire relationship with respect to RLI's possible acquisition of a distributor of ophthalmic goods. On the authority of *Louis Glunz Beer,* Allied might reasonably claim that the agreement did not cover the purchase of ophthalmic goods by RLI from Allied; but Allied cannot reasonably claim that the agreement did not cover the purchase of Target by RLI.

2. *Skinner v. Shirley of Hollywood,* 723 F.Supp. 50, 56 (N.D.Ill.1989); *Braman v. Woodfield Gardens Associates,* 715 F.Supp. 226, 229 (N.D.Ill. 1989); *McIntosh v. Magna Systems, Inc.,* 539 F.Supp. 1185, 1190–91 (N.D.Ill.1982).