# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4020

_____

| | | |
|---|---|---|
| Richard D. Anheluk, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Richard A. Ohlsen; Richard A. | * | |
| Ohlsen, Ltd., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 19, 2006
Filed: August 21, 2006

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Richard Anheluk filed this diversity action against Richard Ohlsen for legal malpractice. The suit is based on Ohlsen's representation of Anheluk in a lender liability lawsuit brought by Anheluk in North Dakota state court. The district court[*] granted Ohlsen's motion for summary judgment, and we affirm.

_____

[*]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

I.

Anheluk, a court reporter, first contacted Ohlsen in 1994 or 1995 regarding the possibility of bringing a lender liability lawsuit against Western Cooperative Credit Union, former Western Cooperative employee Elaine Muth, and Community First National Bank. In September 1993, Anheluk had solicited from Western Cooperative an offer for a loan insured by the Federal Housing Administration ("FHA"). He was referred to Muth, who was employed at Western Cooperative at the time. Muth was fired while in the process of reviewing Anheluk's application, and although the application eventually was approved, Western Cooperative's loan offer was delayed as a result. Anheluk ultimately rejected Western Cooperative's offer and acquired a loan from Community First instead. The United States Department of Housing and Urban Development did not endorse the loan, a necessary step in the process to receive FHA loan insurance, *see* 24 C.F.R. §§ 200.141(a), 200.150-152 (1993), so Anheluk's loan was uninsured. (Appellant's App. at 187).

Anheluk eventually hired Ohlsen on May 26, 2000. Ohlsen filed a complaint for Anheluk dated June 23, 2000, against Western Cooperative, Muth, and Community First. By September 22, 2000, Anheluk had paid Ohlsen $1706, and had forgiven outstanding court reporter fees of $782 that Ohlsen owed Anheluk. In litigating the case, however, Ohlsen failed to respond to discovery requests by the defendants, and the state court granted defendants' motions compelling Ohlsen to respond. Ohlsen still failed to respond, and on February 25, 2002, the state court granted the defendants' motions to dismiss Anheluk's suit with prejudice. Ohlsen did not make Anheluk aware of the discovery requests, the motions to compel discovery and dismiss, or the district court's order dismissing his suit. Ohlsen later explained that he "drew the conclusion that [Anheluk] wasn't interested in going forward" with the suit, since Anheluk "ignored the case for years at a time."

Anheluk called Ohlsen in July 2002 inquiring about the status of his case, and Ohlsen responded: "What do you mean? That's been dismissed." Ohlsen said that he would review his file and explain to Anheluk what had happened, but Ohlsen never followed through on that assurance. Anheluk later learned from Community First's attorney about Ohlsen's failure to respond to discovery requests, the motions to compel discovery and to dismiss, and the court's judgment dismissing Anheluk's suit.

Anheluk filed this legal malpractice action against Ohlsen and his law firm, alleging negligence and breach of contract. In ruling on Ohlsen's motion for summary judgment, the district court applied North Dakota's "case within a case" doctrine, and concluded that Anheluk had not introduced sufficient evidence that Ohlsen's misconduct was the proximate cause of Anheluk's lack of success in the state court. The court thus held that Anheluk had not presented a submissible legal malpractice claim against Ohlsen, and dismissed the complaint.

II.

According to North Dakota law, a client who alleges a legal malpractice claim against his attorney must establish the existence of an attorney-client relationship, a duty owed by the attorney to the client, a breach of that duty by the attorney, and damages sustained by the client that were proximately caused by the breach of duty. *Dan Nelson Constr., Inc. v. Nodland & Dickson*, 608 N.W.2d 267, 271 (N.D. 2000). To prove proximate cause, the client must satisfy the "case within a case" doctrine by showing that, but for the attorney's misconduct, the outcome of the underlying litigation would have been more favorable for the client. *Id.*; *Wastvedt v. Vaaler*, 430 N.W.2d 561, 567 (N.D. 1988). Anheluk does not dispute the applicability of this doctrine to his attorney malpractice suit, but argues that the district court erred by concluding that the outcome in his underlying state court case would not have been more favorable to him without Ohlsen's negligence and misconduct. We review *de novo* a district court's grant of summary judgment, considering the evidence and all

reasonable inferences in the light most favorable to the non-moving party. *Macawber Eng'g, Inc. v. Robson & Miller*, 47 F.3d 253, 255 (8th Cir. 1995).

Anheluk's underlying complaint alleged a claim for breach of contract and tort claims for negligence, misrepresentation, and overreaching, but his appeal is limited to the district court's ruling on the contract claims. With respect to his breach of contract claims against Western Cooperative and Muth, Anheluk argues that Muth and Aldon Beggs, Western Cooperative's president, made oral promises on behalf of Western Cooperative to offer Anheluk an FHA-insured loan. In September 1993, Anheluk approached Muth at Western Cooperative about acquiring an FHA-insured loan to finance the operation of a feedlot near Dickinson, North Dakota. He planned to mortgage his home and ten acres of his feedlot property to secure the loan. Anheluk explained to Muth that time was of the essence in obtaining the loan, because he planned to use a portion of the loan to cover tax liability due on October 15. Muth responded that it would be "no problem" to complete the loan in three weeks, since she had previously "done these in a week or two."

Circumstances changed, however, when Muth contacted Anheluk on October 7 and explained that she was planning to leave Western Cooperative to begin a job with Liberty National Bank. Muth offered Anheluk an opportunity to obtain the loan he sought through Liberty National, but she explained to him that whether he worked with her at Liberty National or stayed with Western Cooperative, he would not receive the loan by the date his tax liability was due. Anheluk complained to Beggs about Muth's plans to move to Liberty National. Beggs assured Anheluk that "[w]e'll take care of you," and terminated Muth's employment with Western Cooperative that day.

According to the evidence taken in the light most favorable to the plaintiff, Anheluk continued the application process with Western Cooperative because of Beggs's representation and Muth's assurances that she saw "no problem" with completing the loan. Anheluk received from Western Cooperative a commitment

-4-

letter dated February 4, 1994, approving his loan application, but he rejected the offer because of conditions that required Anheluk to make repairs to the home that would serve as collateral for the mortgage.

Anheluk argues that he presented a submissible "case within a case" on the claim that Western Cooperative and Muth breached oral contracts in which they agreed to make him a loan. To establish a breach of a lender liability contract, the mortgagor must establish a promise made by the mortgagee, reliance on the promise by the mortgagor, breach of the promise by the mortgagee, and damages caused by the mortgagee's breach. *See Delzer v. United Bank of Bismark*, 559 N.W.2d 531, 534-35 (N.D. 1997). We conclude that Anheluk cannot prevail on this breach of contract claim, because neither Muth nor Beggs made an enforceable oral promise that Western Cooperative would offer a loan to Anheluk.

Muth made several statements to Anheluk that he interpreted as meaning that "she saw no problem whatsoever" with his financial statements, and that "indications for approval looked good." By Anheluk's own admissions, however, Muth's positive remarks about the likelihood of loan approval did not amount to oral promises. According to Anheluk, as of October 7, when Muth informed him of her upcoming move to Liberty National Bank, the loan "wasn't guaranteed," and "[i]t wasn't a done deal yet," but they were telling him that "things looked good." Anheluk was asked whether, before October 7, "Elaine Muth told you it was a done deal, you had a loan, no questions asked?," to which Anheluk responded "[n]o, I'm not telling you that." (Appellee's App. at 561). Anheluk's argument that Muth made oral promises guaranteeing him a loan cannot be sustained where his own testimony is that Muth's remarks were not binding promises to enter a loan agreement.

As for Beggs's comment to Anheluk that "[w]e'll take care of you," it lacks essential terms necessary to be an enforceable promise. *See Union State Bank v. Woell*, 434 N.W.2d 712, 717 (N.D. 1989). Moreover, even if Beggs's vague comment

could amount to a promise, Western Cooperative *did* "take care of" Anheluk by offering him an FHA-insured loan on February 4, 1994, which Anheluk rejected because of conditions Western Cooperative placed on the loan. The outcome in Anheluk's state court suit against Muth and Western Cooperative therefore would not have been more favorable to Anheluk even had Ohlsen acted with due care.

Anheluk also alleges that the district court erred in concluding that he had not stated an actionable claim in state court against Community First. After rejecting Western Cooperative's loan offer, Anheluk applied for a mortgage loan at Community First, believing that it would be insured by the Federal Housing Administration. Community First quickly approved Anheluk, and Anheluk secured the loan in June 1994. Because of the delay caused by his inability to secure a loan at Western Cooperative, Anheluk used much of his Community First loan proceeds to pay debt rather than to finance his feedlot operation. Anheluk did not have much income when the Community First loan installment payments came due, and he became delinquent in making payments within the first two or three months of the loan's repayment term.

Anheluk believed he had secured an FHA-insured loan from Community First. About two and a half years into the term of his Community First loan, however, Anheluk learned that his loan had not been insured by the FHA, because Anheluk was delinquent in making his early payments. Further investigation with the Department of Housing and Urban Development ("HUD") confirmed that Anheluk did not have an FHA-insured loan because the loan was never endorsed. (Appellant's App. at 187); *see* 24 C.F.R. §§ 200.150-152 (1993) (setting forth procedure for "Insurance Endorsement").

Anheluk admits that his delinquency on early loan payments resulted in his inability to obtain the FHA insurance. He acknowledges that he did not use any of the proceeds from the loan to finance his feedlot operation, instead using the money to pay off new debt that accumulated between October 1993, when he learned that Muth

was leaving Western Cooperative, and June 1994, when he received the loan from Community First. (Appellee's App. at 269). The loan, he conceded, "never was instated as an FHA-insured loan because of those late payments right at the beginning." (*Id*. at 270, 562). This admission is consistent with regulations governing the insurance program, which required that an application for insurance set forth information to enable the FHA to determine the eligibility of the mortgagor to carry and pay the proposed mortgage debt. 24 C.F.R. § 200.143(c)(1) (1993); *see also id*. § 203.33 (setting standards for adequacy of mortgagor's gross income to qualify for single family mortgage insurance).

Notwithstanding his admitted delinquency, Anheluk argues that because Community First failed to gain HUD's endorsement of the loan *before* Anheluk missed a payment, it was Community First's failure to process the loan, not his delinquency in repaying the loan, which resulted in the absence of FHA insurance. The argument seems to be that if the bank had submitted the loan for insurance consideration at an earlier time, before Anheluk's inability to make payments on the loan was manifested, then the FHA would have insured the loan.

We find this argument unavailing. For one thing, Anheluk directs us to no evidence that Community First was required by the loan contract to gain endorsement of the loan prior to the start of repayment. Nor, if earlier action was required, has he submitted proof that the bank failed to present the loan to the federal agency in a timely manner. But even if these two points were established, there is still no showing that the timing would have made any material difference. Any effort to obtain FHA insurance in June 1994 would have required disclosure of Anheluk's financial condition and his plans for use of the loan proceeds. This information would have alerted the FHA to his inability to make the loan payments, even though he had not yet demonstrated this inability by failing to make the initial payments. Whether the insurance matter was considered just before or just after the delinquency materialized, the conclusion would have been the same: Anheluk's income was inadequate to make

the periodic payments required by the mortgage. There is thus no reasonable interpretation of the evidence from which a finder of fact could conclude that Community First breached its contract with Anheluk. As a consequence, Anheluk has not shown that the outcome in his state court action against Community First would have been more favorable but for Ohlsen's misconduct.

Finally, Anheluk argues that even if he cannot recover damages due to Ohlsen's misconduct, he is at least entitled to recovery of the $1706 he paid in legal fees and the $782 in debt forgiveness. Anheluk's claim for reimbursement is essentially one for restitution. Even construing Count II liberally in Anheluk's favor to include a claim for restitution, *see* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1282, at 714 (3d ed. 2004), Anheluk cannot recover fees from Ohlsen.

Where, as here, a plaintiff has no substantive claim for breach of contract, an actionable claim for restitution must be grounded in showing of unjust enrichment. 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.1(1), at 556 (2d ed. 1993); *see also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999). That is so because in such an instance, "restitutionary ideals form the only substantive basis for the claim." 1 Dobbs, *supra*, § 4.1(1), at 556. North Dakota law, however, bars a claim for unjust enrichment when there exists an express contract between the parties regarding the same subject matter as that for which the claim of unjust enrichment is maintained. *Lochthowe v. Estate of Peterson*, 692 N.W.2d 120, 124 (N.D. 2005). Anheluk's express contract with Ohlsen for legal representation precludes him from claiming unjust enrichment. *Cf. Allied Vision Group, Inc. v. RLI Prof'l Techs., Inc.*, 916 F. Supp. 778, 780-81 (N.D. Ill. 1996).

\* \* \*

The judgment of the district court is affirmed.

_____